UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRYL BYRD,

       Petitioner,                                     Case No. 10-11823

v.

                                           HON. AVERN COHN

DEBRA SCUTT,

       Respondent.

_____/

**MEMORANDUM AND ORDER**
**DENYING PETITION FOR WRIT OF HABEAS CORPUS**
**AND**
**DENYING A CERTIFICATE OF APPEALABILITY**

**I. Introduction**

This is a habeas case under 28 U.S.C. § 2254.  Petitioner Darryl Byrd (Petitioner)

is a state inmate at the G. Robert Cotton Correctional Facility in Jackson, Michigan

where he is serving a concurrent sentences of ten to fifteen years in prison for operating

under the influence of liquor causing death, Mich. Comp. Laws § 257.625(4); ten to

fifteen years in prison for operating a motor vehicle on a suspended or revoked license

causing death, Mich. Comp. Laws § 257.904(4); ten to fifteen years for manslaughter

with a motor vehicle, Mich. Comp. Laws § 750.321; one to five years for operating a

motor vehicle while intoxicated, Mich. Comp. Laws § 257.625(1)(a); time served on an

operating a motor vehicle while on a suspended license, Mich. Comp. Laws §

257.904(2)(b); and being a fourth felony habitual offender, Mich. Comp. Laws § 769.12.

Petitioner has filed a *pro se* petition for writ of habeas corpus claiming that he is

incarcerated in violation of his constitutional rights.  Respondent, through the Attorney

General's Office, filed a response, arguing that Petitioner's claims are procedurally defaulted or without merit.  For the reasons that follow, the petition will be denied.

## II.  Procedural History

Petitioner pleaded *nolo contendere* to the above offenses in the Wayne County Circuit Court.  Petitioner's conviction was affirmed on appeal.  *People v. Byrd,* No. 289813 (Mich.Ct.App. February 13, 2009); *lv. den.* 483 Mich. 1020 (2009).

In 2010, Petitioner filed an application for habeas relief with this Court.  On May 13, 2010, the Court granted Petitioner's motion to hold his habeas petition in abeyance to permit him to return to the state courts to exhaust additional claims that he had failed to raise in the state courts prior to filing his habeas petition.  The Court also administratively closed the case.  (Doc. 5).

Petitioner returned to the trial court and filed a post-conviction motion for relief from judgment, which was denied.  *People v. Byrd,* No. 08-005379-01 (Wayne County Circuit Court, October 21, 2011).  The Michigan appellate courts denied petitioner leave to appeal. *People v. Byrd,* No. 309140 (Mich.Ct.App. August 24, 2012); *lv. den.* 493 Mich. 920 (2012).

On January 15, 2013, the Court reinstated the petition to the Court's active docket and permitted Petitioner to file an amended habeas petition.  (Doc. 9).  In his original and amended habeas petitions, Petitioner seeks habeas relief on a number of different grounds.  For clarity, the Court will consolidate Petitioner's claims into the following seven grounds:

> I. Petitioner's no contest plea should be vacated because it was based on a misstatement of the law at the time, leading petitioner to believe he could be sentenced as an habitual offender.  This made Petitioner's plea involuntary.

II. Petitioner's habitual offender convictions should be vacated because the prosecution failed to timely file notice of habitual offender status.

III. Petitioner was denied the effective assistance of trial counsel by his counsel's failure to object to his habitual offender status.

IV. Petitioner's counsel was ineffective for failing to do a reasonable investigation of all relevant defenses and information necessary for his plea to be voluntary.

V. Petitioner is entitled to resentencing because he was sentenced based on inaccurate information pertaining to Offense Variables 4 and 5.

VI. Petitioner was denied the effective assistance of appellate counsel for failing to raise on direct appeal those issues he raised in his motion for relief from judgment.

VII. The prosecutor withheld critical evidence from petitioner.

### III. Facts

The material facts of Petitioner's conviction are gleaned from the record as follows.

Petitioner's convictions arose out of a car accident that occurred on January 1, 2008, in which the 74 year old victim was killed after Petitioner's car collided with the victim's car. Petitioner's blood alcohol level was .29.[1]

Petitioner's trial was scheduled for July 30, 2008. On the day of trial, Petitioner agreed to plead *nolo contendere* to charges of operating under the influence of liquor causing death, operating a motor vehicle on a suspended or revoked license causing death, manslaughter, operating a motor vehicle while intoxicated, and operating a motor vehicle while on a suspended license. Petitioner also agreed to plead *nolo contendere* to being a fourth felony habitual offender, even though the prosecutor apparently only

---

[1]The legal limit of a blood alcohol level under Michigan law for drunk driving is 0.08. See Mich. Comp. Laws § 257.625(1)(b).

filed the notice to charge petitioner with being an habitual offender on the day of trial.  In exchange for his plea, the trial court agreed to enter into a *Cobbs* agreement with petitioner, in which he agreed to sentence petitioner to 10-15 years in prison. [2] (Tr. 7/30/08, pp. 2-10).  During the discussions with the trial court concerning the *Cobbs* agreement, the prosecutor indicated that if there was a conviction after a trial, she would ask for a "natural life sentence," although she then acknowledged that Petitioner would be eligible for parole after serving twenty years on a life sentence, but commented that "given the parole board's dislike for paroling folks, who knows what he would get." (*Id.,* pp. 4-5).  Prior to accepting petitioner's *nolo contendere* plea, the trial court advised Petitioner of the maximum penalties that he could get for the crimes.  The judge specifically informed petitioner that by pleading *nolo contendere* to being a fourth felony habitual offender, it made the underlying offenses "punishable by up to life [in prison]." (*Id.,* p. 9).  Petitioner was advised of the rights that he was waiving by pleading *nolo contendere.*  A factual basis was made for the plea from the police reports and from petitioner's acknowledgement that he had a prior record. (*Id.,* pp. 11-14).

Petitioner moved on the day of sentencing to withdraw his plea, but the motion was denied.  Petitioner was sentenced in conformance with the *Cobbs* agreement.  His convictions and sentence were affirmed on appeal, as indicated above.

## IV.  Analysis

---

[2]In *People v. Cobbs*, 443 Mich. 276 (1993), the Michigan Supreme Court authorized a judge to preliminarily indicate the appropriate length of sentence, but if the defendant subsequently pleads guilty and the judge determines that the sentence must exceed the preliminary evaluation, the defendant has an absolute right to withdraw the plea. See M.C.R. 6.310(B)(2)(b); *Wright v. Lafler*, 247 F. Appx 701, 703, n.1 (6th Cir. 2007).

## A.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim–
>> (1)      resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as
>> determined by the Supreme Court of the United States; or
>> (2)      resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented in the State
>> court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court

has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-

06 (2000).  An "unreasonable application" occurs when "a state court decision

unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."

*Id.* at 409.  A federal habeas court may not "issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a

state-court decision must be consistent with the respect due state courts in our federal

system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a

'highly deferential standard for evaluating state-court rulings,'and 'demands that

state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct.

1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)).   "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).   The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*   Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

## B.  Petitioner's Claims

### 1.  Challenges to the Plea

Petitioner first challenges the voluntariness of his *nolo contendere* plea on several grounds.  None of Petitioner's challenges warrant habeas relief.

#### a.

Initially, the Court observes that Petitioner has no absolute right to withdraw his *nolo contendere* plea.  *See Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 748, 655 (E.D. Mich. 2005)(internal citations omitted).  Therefore, unless the plea violated a clearly-established constitutional right, whether to allow the withdrawal of a criminal defendant's guilty or *nolo contendere* plea is discretionary with the state trial court. *Id.*

A guilty or *nolo contendere* plea that is entered in state court must be voluntarily and intelligently made. *See Shanks,* 387 F. Supp. 2d at 749; *Doyle v. Scutt,* 347 F.

6

Supp. 2d 474, 482 (E.D. Mich. 2004)(both citing *Boykin v. Alabama,* 395 U.S. 238, 242 (1969)).  In order for a plea of guilty or *nolo contendere* to be voluntarily and intelligently made, the defendant must be aware of the "relevant circumstances and likely consequences" of his plea. *Hart v. Marion Correctional Institution*, 927 F. 2d 256, 257 (6th Cir. 1991); *Shanks,* 387 F. Supp. 2d at 749.  The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he or she is pleading guilty or *nolo contendere*. *King v. Dutton*, 17 F. 3d 151, 154 (6th Cir. 1994). When a petitioner brings a federal habeas petition challenging his plea of guilty or *nolo contendere*, the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. *Garcia v. Johnson*, 991 F. 2d 324, 326 (6th Cir. 1993).  The factual findings of a state court that the guilty or *nolo contendere* plea was properly made are generally accorded a presumption of correctness.  Petitioner must overcome a heavy burden if the federal court is to overturn these findings by the state court. *Id.*

It is only when the consensual character of a guilty or *nolo contendere* plea is called into question that the validity of a guilty or *nolo contendere* plea may be impaired.  *Mabry v. Johnson*, 467 U.S. 504, 508-09 (1984).  A plea of guilty or *nolo contendere* entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his or her own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (i.e. bribes). *Id.*  Federal and state courts will uphold a

2:10-cv-11823-AC-CEB   Doc # 18   Filed 09/24/13   Pg 8 of 19   Pg ID 927

state court guilty or *nolo contendere* plea if the circumstances demonstrate that the defendant understood the nature and consequences of the charges and voluntarily chose to plead guilty or *nolo contendere. See Thirkield v. Pitcher,* 199 F. Supp. 2d 637, 652 (E.D. Mich. 2002).

**b.**

Here, the record shows that Petitioner freely and voluntarily pleaded *nolo contendere* to the above charges. Petitioner was advised of the maximum penalties for the charges and the rights that he would be waiving by pleading *nolo contendere.* Petitioner was advised of the terms of the plea agreement and acknowledged that this was the complete terms of the agreement. That is sufficient to establish his plea was voluntary.

Petitioner, however, says that his plea was involuntary or coerced because he was lead to believe by the prosecutor's comments that she would seek a "natural life sentence" that he was facing life in prison without parole, as opposed to parolable life, if he was convicted at trial of the charges and being a fourth felony habitual offender.[3]

Petitioner is not entitled to habeas relief on his claim for several reasons. First, the United States Constitution does not require a judge to explain the meaning of the term "life sentence" and other unambiguous terms during the plea colloquy in order to dispel any alleged misinformation that is not revealed on the record. *See McAdoo v. Elo,* 365 F.3d 487, 497 (6th Cir. 2004). It was thus not necessary for the trial court to explain to Petitioner that he faced a maximum sentence of parolable, as opposed to

---

[3]Under Mich. Comp. Laws § 769.12(1)(a), a fourth felony habitual offender can be sentenced to up to life in prison if his current felony carries a maximum sentence of five or more years in prison, as were the underlying felonies in petitioner's case.

8

nonparolable, life if he was convicted as a fourth felony habitual offender.

Secondly, Petitioner has failed to show that he was misled into believing that he would receive a nonparolable life sentence if convicted after trial. Although the prosecutor initially stated that she would seek a "natural life" sentence if Petitioner was convicted after a trial, she immediately clarified that Petitioner would be eligible for parole on these charges, although she was unsure whether a parole board would ever parole him. More importantly, when advising Petitioner of the penalties of the various charges, the trial court explicitly explained to Petitioner that a fourth habitual offender charge was punishable by "up to life." (Tr. 7/30/08, p. 9). This language clearly conveyed to Petitioner that the maximum sentence that he could receive on a fourth habitual offender charge was life imprisonment but that he could also receive less than a life sentence if convicted. Thus, Petitioner was adequately advised that he did not automatically face a nonparolable life sentence if convicted of being a fourth felony habitual offender after trial.

Finally, assuming that Petitioner was misled into believing that he faced a nonparolable life sentence if convicted of being an habitual offender after trial, Petitioner has failed to show that this materially affected his decision to accept the *Cobbs* agreement of 10-15 years in prison as opposed to if he believed that he merely faced a parolable life sentence if convicted. As a practical matter, there is very little difference between a parolable and nonparolable life sentence in Michigan. The Michigan Parole Board rarely grants parole to prisoners who are sentenced to parolable life. *McAdoo,* 365 F. 3d at 497 (internal citation omitted). Statistics show that only rarely are Michigan prisoners who are sentenced to parolable life terms ever

paroled. *Id., See* also Jeanice Dagher-Margosian, *Life Means Life, Parole Rarely Granted on Nommandatory Life Terms*, 73 MICH.B.J. 1184, 1184-1185 (1994). Petitioner therefore has not shown that he would have rejected the plea agreement of 10-15 years and gone to trial if he faced the risk of only a parolable, as opposed to a nonparolable, life sentence.

Petititioner next contends that the plea agreement was illusory because the habitual offender notice was not filed within twenty one days of arraignment, as required under Mich. Comp. Laws § 769.13, but was only filed on the day of trial. Petitioner argues that because the habitual offender notice was untimely filed, he received no benefit from the plea and sentencing agreement because absent the habitual offender charges, the maximum sentence that he could receive in this case was 10-15 years. [4]

A plea agreement is entered into involuntarily and unknowingly if the defendant is unaware that the prosecution's promise is illusory. *See United States v. Randolph*, 230 F.3d 243, 250-51 (6th Cir. 2000). Illusory representations made by the prosecutor to induce a defendant to waive his right to trial and enter a guilty plea have been found to constitute coercion justifying the withdrawal of a guilty plea. *See Spearman v. United States*, 860 F. Supp. 1234, 1249 (E.D. Mich. 1994).

Respondent suggests that the prosecutor, to avoid the untimeliness issue with

---

[4]Under Mich. Comp. Laws § 769.34(2)(b), a minimum sentence cannot exceed 2/3 of the maximum sentence. *See People v. Tanner,* 387 Mich. 683, 690; 199 N.W. 2d 202 (1972). Without the habitual offender change, the maximum sentences that Petitioner faced under the manslaughter, operating under the influence of liquor causing death, and operating a motor vehicle on a suspended or revoked license causing death charges was fifteen years. Thus, minimum sentence Petitioner could have received was ten years.

the habitual offender charges, could have dismissed the original underlying criminal charges and re-filed the charges along with a timely filed habitual offender notice. The Michigan Court of Appeals, has in fact, indicated that where a defendant rejects a plea bargain, it is permissible for the prosecutor to dismiss criminal charges and reissue them along with a timely filed supplemental information charging the defendant with being an habitual offender. *See People v. Bennett,* No. 2001 WL 1512069, * 10-11 (Mich. Ct. App. November 27, 2001).

Based on the foregoing, Petitioner's plea agreement was not illusory. Petitioner faced up to life in prison if convicted of being a fourth felony habitual offender. The *Cobbs* agreement limited petitioner's sentencing exposure to ten to fifteen years. Contrary to Petitioner's assertion, had he rejected the proposed plea agreement, the prosecutor was free to dismiss the underlying charges and re-file them along with a timely filed habitual offender charge. The plea and sentence agreement was not illusory because Petitioner was promised a sentence agreement which therefore amounted to a real, tangible benefit in consideration for the plea. *See Daniels v. Overton*, 845 F. Supp. 1170, 1174 (E.D. Mich. 1994). Because Petitioner derived a real benefit from his plea and sentencing bargain in this case, his plea was not illusory and he is therefore not entitled to habeas relief. *See McAdoo v. Elo,* 365 F. 3d at 498.

Overall, Petitioner is not entitled to habeas relief with respect to his plea.

### 2.  Challenges to the Sentence

Petitioner's second and fifth claims will be addressed together because they

both involve challenges to his sentence.[5]

In his second claim, Petitioner asks the Court to vacate his habitual offender convictions because the habitual offender notice was untimely filed. This claim involving the application of Michigan's habitual offender laws is non-cognizable on habeas review, because it involves an application of state law. *See Rodriguez v. Jones,* 625 F. Supp. 2d 552, 569 (E.D. Mich. 2009); *Grays v. Lafler*, 618 F. Supp. 2d 736, 751 (W.D. Mich. 2008). Petitioner's claim that he received inadequate notice of the habitual offender charge under Michigan law thus does not state a claim that is cognizable in federal habeas review. *Tolbert v. LeCureaux,* 811 F. Supp. 1237, 1240-1241 (E.D. Mich. 1993). Petitioner is not entitled to habeas relief on his second claim.

In his fifth claim, petitioner contends that the trial court incorrectly scored several offense variables under the Michigan Sentencing Guidelines. This claim also is not cognizable for federal habeas review, because it is basically a state law claim. *See Tironi v. Birkett*, 252 Fed. Appx. 724, 725 (6th Cir. 2007)*; Howard v. White,* 76 Fed. Appx. 52, 53 (6th Cir. 2003); *Thomas v. Foltz*, 654 F. Supp. 105, 107 (E.D. Mich. 1987). "Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." *See Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009). "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle*

---

[5]Respondent contends that petitioner's second, third, fourth, fifth, and seventh claims are procedurally defaulted because he raised them for the first time in his post-conviction motion for relief from judgment and failed to show cause and prejudice for failing to raise these claims on his direct appeal, as required by M.C.R. 6.508(D)(3). In light of the fact that these claims are without merit, it is not necessary to address whether the claims are procedurally defaulted.

12

*v. Scutt,* 347 F. Supp. 2d at 485.  Any error by the trial court in calculating his guideline score would not merit habeas relief. *Id.*  Petitioner is not entitled to habeas relief on his fifth claim.

### 3.  Ineffective Assistance of Counsel

#### a.

Petitioner's third, fourth, and sixth claims are addressed together because they all allege the ineffective assistance of trial and appellate counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, Petitioner satisfy a two prong test.  First, Petitioner must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, Petitioner must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.*  In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, Petitioner show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington v. Richter*, 131 S. Ct. at 792).  The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See*

13

*Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

**b.**

In his third claim, Petitioner contends that trial counsel was ineffective for failing to object to the untimely filing of the habitual offender charges on the day of trial and permitting petitioner to plead *nolo contendere* to these untimely habitual offender charges.  As discussed above regarding Petitioner's first claim, *infra*, had counsel objected to the untimely filing of the habitual offender charges, the prosecutor could have dismissed the charges and re-filed the criminal charges against petitioner along with a timely filed supplemental information charging petitioner with being an habitual offender.  The plea and sentencing agreement in this case enabled Petitioner to avoid the very real possibility of a life sentence.  A successful challenge to the untimely filing of the habitual offender charges would have led only to the prosecutor recharging petitioner with being a fourth felony habitual offender, thus, counsel was not ineffective for failing to object to the untimely filing of the habitual offender charges in this case.  Because there were no grounds for successfully challenging the habitual offender charges in this case, counsel was not ineffective for failing to challenge the viability of the habitual offender charges. *See e.g. Cummings v. United States,* 84 Fed. Appx. 603, 605 (6th Cir. 2003).

In his fourth claim, Petitioner contends that trial counsel was ineffective for failing to investigate various defenses to the charges prior to Petitioner entering his *nolo contendere* plea.  This claim lacks merit.  An unconditional guilty plea constitutes a waiver of all pre-plea non-jurisdictional constitutional deprivations. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  A *nolo contendere* plea also constitutes a waiver of all non-

14

jurisdictional defects. *United States v. Freed,* 688 F. 2d 24, 25 (6th Cir. 1982); *See also Shanks v. Wolfenbarger,* 387 F. Supp. 2d at 747.  Pre-plea claims of ineffective assistance of trial counsel are considered nonjurisdictional defects that are waived by a guilty or *nolo contendere* plea. *See United States v. Stiger,* 20 Fed. Appx. 307, 309 (6th Cir. 2001); *See also Siebert v. Jackson,* 205 F. Supp. 2d 727, 733-34 (E.D. Mich. 2002)(habeas petitioner's claims regarding alleged deprivations of his constitutional rights that occurred before his guilty plea, as a result of his trial counsel's alleged ineffective assistance, were foreclosed by his guilty plea, where he stated at plea that he was satisfied with counsel's representation, and he did not complain of counsel's advice concerning plea agreement).  Petitioner's pre-plea claims of ineffective assistance of trial counsel have been waived by his *nolo contendere* plea.  Accordingly, Petitioner is not entitled to habeas relief on his fourth claim.

In his sixth claim, Petitioner contends that appellate counsel was ineffective for failing to raise his second, third, fourth, fifth, and seventh claims on his direct appeal. The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). In addition, "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  As explained above, Petitioner's second through fifth and seventh claims are meritless.  Because these claims lack merit, appellate counsel was not ineffective in failing to raise them on direct appeal.  Habeas

15

relief is therefore not warranted.

### 4. *Brady* Claim

#### a.

In his seventh claim, Petitioner claims that the prosecutor improperly withheld photographs of the victim's car taken at the crash site.  Suppression by the prosecution of evidence favorable to the defendant upon request violates due process, where the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution.  *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *See also Giglio v. United States*, 405 U.S. 150, 154 (1972)(exculpatory evidence includes "evidence affecting" witness "credibility," where the witness' "reliability" is likely "determinative of guilt or innocence").  There are three components of a true *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999).

In *Brady*, the Supreme Court explained that "[a] prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him ... helps *shape a trial* that bears heavily on the defendant." *Brady*, 373 U.S. at 87–88 (emphasis added).  Similarly, in *United States v. Agurs*, 427 U.S. 97, 103-04 (1976), the Supreme Court indicated that the rule that prohibits the use of perjured testimony, upon which the *Brady* rule was founded, is based on the idea that the use of perjured testimony represents "a corruption of the truth-seeking function of the *trial process*." (emphasis added).  Finally, in *United States v. Bagley*, 473 U.S. 667, 678

16

(1985), the Supreme Court ruled that "suppression of evidence amounts to a

constitutional violation only if it deprives the defendant of a *fair trial*." (emphasis added).


In *United States v. Ruiz*, 536 U.S. 622 (2002), the Supreme Court held that a

guilty plea is not rendered involuntary by the prosecutor's failure to disclose

exculpatory impeachment information prior to the entry of the plea. *See id.* at 628–33.

The Supreme Court noted that "impeachment information is special in relation to the

*fairness of a trial*, not in respect of whether a plea is *voluntary*." *Ruiz*, 536 U.S. at 629

(emphasis original).  The Supreme Court further observed that "it is particularly difficult

to characterize impeachment information as critical information of which the defendant

must always be aware prior to pleading guilty." *Id.* at 630.

**b.**

To the extent that this allegedly withheld evidence is viewed as impeachment

evidence, petitioner would not be entitled to habeas relief because as mentioned

above, the prosecution is not required to disclose material impeachment evidence prior

to entering a plea agreement with a criminal defendant.  *Ruiz*, 536 U.S. at 633; *Post v.*

*Bradshaw,* 621 F. 3d 406, 426 (6th Cir. 2010).

Moreover, even if these photographs could be characterized as substantive

exculpatory evidence, petitioner would not be entitled to habeas relief.  Although the

Supreme Court did not consider in *Ruiz* whether their holding also applied to the

nondisclosure of exculpatory substantive evidence prior to the entry of a guilty plea, [6]

---

[6]Justice Thomas, concurring in the judgment, saw no reason to distinguish
between "affirmative defense information" and exculpatory impeachment evidence.  *See*
*Ruiz*, 536 U.S. at 633-34 (Thomas, J., concurring).

17

the Supreme Court in *Ruiz* emphasized the *Brady* rule's connection to the truth-finding

function of a trial as the rationale behind their decision, which suggested that the

holding in *Ruiz* extends to exculpatory substantive evidence as well.  Significantly, the

Supreme Court did not differentiate between the two types of exculpatory evidence,

noting that "due process considerations, the very same considerations that led this

Court to find trial related rights to exculpatory and impeachment information in *Brady*

and *Giglio*, argue against the existence of the 'right'" to pre-plea disclosure.  *Ruiz*, 536

U.S. at 631.

In light of *Ruiz*, the Supreme Court's repeated description of *Brady* as grounded

in the right to a fair trial, as well as the fact that the Supreme Court has yet to require

that exculpatory information be disclosed prior to the entry of a guilty plea, Petitioner is

not entitled to habeas relief on this claim, even if the allegedly withheld evidence was

viewed as substantive exculpatory evidence.  *See Orman v. Cain,* 228 F. 3d 616, 620-

21 (5th Cir. 2000); *See also Jones v. Bryant*, 27 Fed. Appx. 699, 701 (7th Cir.2001).

This is particularly so in light of the fact that Petitioner pleaded *nolo contendere* to the

charges in open court.  *See Jones,* 27 Fed. Appx. at 701.  Overall, Petitioner is not

entitled to habeas relief on his *Brady* claim.

### IV.  Conclusion

For the reasons stated above, the state courts' rejection of petitioner's claims did

not result in decisions that were contrary to Supreme Court precedent, an

unreasonable application of Supreme Court precedent, or an unreasonable

determination of the facts.  Accordingly, the petition for a writ of habeas corpus is

**DENIED.**

18

Furthermore, reasonable jurists would not debate the Court's assessment of petitioner's claims, nor conclude that the issues deserve encouragement to proceed further.  The Court therefore **DENIES** a certificate of appealability under 28 U.S.C. § 2253(c)(2). [7] *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). .

  **SO ORDERED.**


  S/Avern Cohn                                   
  AVERN COHN
  UNITED STATES DISTRICT JUDGE


Dated:  September 24, 2013


I hereby certify that a copy of the foregoing document was mailed to the attorneys of
 record on this date, September 24, 2013, by electronic and/or ordinary mail.


  S/Sakne Chami                        
  Case Manager, (313) 234-5160

---

[7] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.